UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FERNANDO LOPEZ-UGARTE, | : | CIVIL NO: 3:13-CV-02850 |
| | : | |
| Petitioner | : | |
| | : | (Judge Caputo) |
| v. | : | |
| | : | (Magistrate Judge Schwab) |
| WARDEN DELBERT SAUERS, | : | |
| | : | |
| Respondent | : | |
| | : | |

## **REPORT AND RECOMMENDATION**

**I. Introduction.**

The petitioner, Fernando Lopez-Ugarte, challenges the finding of a Disciplinary Hearing Officer that he was guilty of possession of a weapon, which finding resulted in Lopez-Ugarte losing 40 days of good time credit. Because we conclude that there was some evidence to support the disciplinary finding, we recommend that the petition for a writ of habeas corpus be denied.

**II. Background and Procedural History.**

Lopez-Ugarte, a federal prisoner proceeding *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. The petition concerns the

disciplinary process in connection with a disciplinary action taken against Lopez-Ugarte.

On March 19, 2012, Officer Haight issued an incident report charging Lopez-Ugarte with misconduct.  In the incident report, Officer Haight described the incident at follows:

> On the above date and time, I responded to Brady A, due to Officer Parker receiving a drop note.  I conducted a search in cube 16.  The inmates assigned in the cube are Rivera #23063-047, Lopez #57954-180, and Alverez #78494-179.  I found a 9 inch long plastic weapon with electrical tape wrapped around it for a handle, in the bed assigned to inmate Rivera #23063-047.

*Doc. 1* at 10.  The incident report charged Lopez-Ugarte with possession of a weapon in violation of Code 104. *Id* [1]  The incident report was referred to the Unit Discipline Committee (UDC), which in turn referred the incident report to the Discipline Hearing Officer (DHO).  *Doc. 4-1* at 16.

The DHO held a hearing on May 17, 2012. *Doc. 1* at 11.  The DHO noted on his Discipline Hearing Officer Report that Lopez-Ugarte was given advance written notice of the charges, was advised of his rights, and indicated that he understood his rights. *Id.*  The DHO further noted that Lopez-Ugarte waived staff

---

[1] A Bureau of Prisons' regulation lists prohibited acts, and a "Code 104" refers to the prohibited act of "Possession, manufacture, or introduction of a gun, firearm, weapon, sharpened instrument, knife, dangerous chemical, explosive, ammunition, or any instrument used as a weapon."  28 C.F.R. § 541.3 (Table).

representation and did not request witnesses. *Id.* at 11-12.  The DHO summarized Lopez-Ugarte's statement as follows:

> Through interpretation, LOPEZ-UGARTE states that the weapon was found in cellmate Rivera's bed.  However, he did not think it belonged to him.  He said he is always in church and helping other people.  LOPEZ-UGARTE went on to state that he has no problems and would not need a weapon and third cellmate Alvarez had no problems.  Finally, he said he'd been incarcerated seven years with no incident reports.

*Id.* at 11.  Relying primarily on the incident report and a photograph of the item found, the DHO found Lopez-Ugarte guilty of possession of a weapon. *Id.* at 12-13.  The DHO stated that there was no credible evidence to show that Lopez-Ugarte was not potentially responsible for the weapon. *Id.*  The DHO reasoned that, although the weapon was discovered in the bed assigned to one of Lopez-Ugarte's cellmates, the bed was a common space in the cell, the Bureau of Prisons' policy provides that inmates are required to keep their assigned area free of contraband, and neither of Lopez-Ugarte's two cellmates claimed ownership of the weapon in their disciplinary cases. *Id.* at 13.  The DHO concluded that because the weapon was found in Lopez-Ugarte's assigned living space, he was jointly responsible for it along with his cellmates. *Id.*  The DHO sanctioned Lopez-Ugarte with 30 days of disciplinary segregation, disallowance of 40 days of good conduct time, and loss of commissary privileges for six months. *Id.*  He set forth his reasons for imposing those sanctions emphasizing that possession of a weapon threatens

the safety of staff and inmates. *Id.*. Lopez-Ugarte unsuccessfully appealed the DHO's decision.

Lopez-Ugarte filed this action on November 22, 2013 claiming that he is actually innocent of possession of a weapon.

**III. Discussion.**

Lopez-Ugarte claims that he is actually innocent of possession of a weapon, and in his reply he contends that the respondent improperly construed his claim as a due process claim. In the criminal context, it is an open question whether a cognizable freestanding claim of actual innocence exists. *See Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 71-72 (2009)("As a fallback, Osborne also obliquely relies on an asserted federal constitutional right to be released upon proof of "actual innocence. Whether such a federal right exists is an open question. We have struggled with it over the years, in some cases assuming, *arguendo,* that it exists while also noting the difficult questions such a right would pose and the high standard any claimant would have to meet.").[2] Lopez-Ugarte has not presented any case, and we are not aware of any cases

---

[2] In contrast to a freestanding claim, actual innocence is often used as a gateway to excuse a procedural default. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013). That is not how Lopez-Ugarte is attempting to use actual innocence here. Rather, he appears to be attempting to assert a freestanding claim of actual innocence.

holding that a freestanding claim of actual innocence is cognizable in the disciplinary process context. Rather, it is well established that in the prison disciplinary context, the pertinent question is whether there is some evidence to support the disciplinary finding such that due process is satisfied. Thus, if Lopez-Ugarte has any claim at all it is a due process claim, and so we address his claim as a due process claim.

The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." A due process claim requires a two-part analysis. First, the court must determine whether the interest asserted by the petitioner is within the scope of protection of life, liberty, or property found in the Due Process Clause. *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000). Second, if the interest is one that is protected by the Due Process Clause, "the question then becomes what process is due to protect it." *Id.*

Federal prisoners have a liberty interest in statutory good time credits. *Denny v. Schultz,* 708 F.3d 140, 143 (3d Cir. 2013). Thus, where a disciplinary proceeding may result in the loss of good time credits, a prisoner is entitled to certain procedural protections. *Campbell v. Holt,* 432 F. App'x. 49, 51 (3d Cir. 2011). While "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply," when a liberty interest is at stake in a prison disclipinary

proceeding, a prisoner is entitled to the following procedural protections: (1) at least 24 hours advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence; (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action; (4) where a prisoner is illiterate or where the complexity of the issues make it unlikely that the prisoner will be able to collect and present necessary evidence, the assistance of a fellow prisoner or a staff member; and (5) an impartial disciplinary tribunal. *Wolff v. McDonnell*, 418 U.S. 539, 556, 564-70 (1974); *Meyers v. Alldredge,* 492 F.2d 296, 305–07 (3d Cir. 1974).  Lopez-Ugarte does not claim that he was denied any of these procedural protections.  Rather, he contends that there was not sufficient evidence to find him guilty of possession of a weapon.

In the prison disciplinary context, a substantive attack on the sufficiency of the evidence must meet a demanding legal standard to succeed.  In *Superintendent v. Hill*, 472 U.S. 445, 454 (1985), the Supreme Court held that the revocation of good time credits does not comport with the minimum requirements of due process unless the findings of the disciplinary hearing officer are supported by some evidence in the record.  "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." *Id.* at 457.  Rather, in the prison disciplinary context, due process "requires only

that there be some evidence to support the findings made in the disciplinary hearing." *Id.* Ascertaining whether the "some evidence" standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* 455. "Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56. "[T]he "some evidence" standard is a standard of appellate review to be applied by the district court rather than a burden of proof in a prison disciplinary proceeding." *Denny v. Schultz,* 708 F.3d 140, 144 (3d Cir. 2013). Under the "some evidence" standard of review, "a reviewing court need only find that the DHO's decision had 'some basis in fact' in order to affirm the decision as comporting with the Due Process Clause." *Id.* at 145 (quoting *Hill*, 472 U.S. at 456).

Given the minimal "some evidence" standard of review, it is difficult and extremely rare for a prisoner to be able to show that there was not sufficient evidence to support the disciplinary finding. This case is not one of those rare cases in which the prisoner has succeeded in showing that there was not sufficient evidence to comply with due process. Here, based on a theory of constructive possession or collective responsibility, Lopez-Ugarte was guilty of possessing the weapon. *See Denny,* 708 F.3d at 145 ("Courts that have considered this question have uniformly held that the discovery of contraband in a shared cell constitutes

"some evidence" of possession sufficient to uphold a prison disciplinary sanction against each inmate in the cell, including depriving that inmate of his or her liberty interest in good time credits.").

Citing criminal cases, Lopez-Ugarte argues that he cannot be held responsible for the weapon, which was found in his cellmate's bed. Lopez-Ugarte contends that constructive possession requires either the exercise of dominion and control or the power and intent to exercise dominion and control over the property. And, he continues, where, as here, the weapon in question was not found in plain view, it is not reasonable to infer that he had dominion and control or power and intent to exercise dominion and control over the weapon. Unfortunately for Lopez-Ugarte, the Third Circuit has rejected those arguments in the prison disciplinary context. In a case where weapons were found in duct work between cells accessible by several inmates, the Third Circuit addressed the constructive possession theory in the prison disciplinary context and rejected the same arguments as Lopez-Ugarte now makes. *See Denny*, 708 F.3d at 145-47. Because the Third Circuit in *Denny* addressed the very arguments that Lopez-Ugarte now makes, we quote at length the Third Circuit's opinion in *Denny*:

> The key question in this case is what limit the Due Process Clause places on the constructive possession theory in the prison context. Denny argues that constructive possession in the prison context requires a showing of "dominion and control over the contraband, as well as knowledge of it." While it is true that this is the standard definition of constructive

possession in this circuit, Denny does not cite a single case from this court or any other court applying this definition of constructive possession in the prison context. As noted above, the Supreme Court has held that a prison disciplinary decision need only be supported by "some evidence" in order to satisfy due process.  Though the "some evidence" standard is a standard of appellate review and not a burden of proof, a reviewing court need only find that the DHO's decision had "some basis in fact" in order to affirm the decision as comporting with the Due Process Clause.

Courts that have considered this question have uniformly held that the discovery of contraband in a shared cell constitutes "some evidence" of possession sufficient to uphold a prison disciplinary sanction against each inmate in the cell, including depriving that inmate of his or her liberty interest in good time credits.  The Seventh Circuit, applying a probability-based approach, held that a twenty-five percent probability that contraband found in a four-person cell belonged to one of the inmates constituted "some evidence."  More recently, the Eighth Circuit concluded that discovery of two homemade weapons found above the entry door to the common area of an eight-person cell constituted "some evidence" of possession.

The BOP relies exclusively on a theory of collective responsibility to argue that the DHO's findings and sanctions should be upheld.  "Through the judicially recognized adaptation of collective responsibility ... the courts have been willing to accept the probabilities that an inmate has committed a sanctionable prohibited act when no direct evidence links him to it."  The BOP further asserts that "[i]ncarcerated inmates are often violent people with demonstrated proclivities for antisocial criminal conduct.  Having stripped them of virtually every means of self-protection and outside aid, the BOP is not free to let the state of nature take its course."

. . .

The application of collective responsibility in the prison context has its foundation in BOP Program Statement 5270.07, *Inmate Discipline and Special Housing Units,* which provides that it is an inmate's responsibility to keep his or her area free of contraband.  Although the BOP Program Statement does not define the term "area," a prisoner's area at a minimum includes

the prisoner's cell as well as any other space accessible from within the cell. In a shared cell, all parts of the cell are equally accessible to each prisoner housed in the cell. Thus, each individual prisoner is responsible for keeping the entire cell free from contraband. Because each prisoner in a shared cell has an affirmative responsibility to keep the entire cell, and all other space accessible from within the cell, free from contraband, it follows that any contraband found within the cell is constructively possessed by each of the inmates housed in that cell. Thus, the mere discovery of contraband in a shared cell constitutes "some evidence" that each prisoner in that cell possessed the contraband.

      Judge Rendell suggests that "this reasoning would allow prison officials to ignore the clear dictates of *Hill,* and be held to a lesser—indeed, unrelated—standard, *i.e.,* collective guilt, as a substitute for the 'some evidence' of possession requirement." She further asserts that "[t]he offense of 'possession' (just like 'killing' and 'assault') is no different in the prison context than outside that context." Contrary to Judge Rendell's mistaken understanding of *Hill,* the "some evidence" standard of appellate review dramatically reduces the amount of evidence required for an inmate to be held responsible for offenses such as killing, assault, and possession of a weapon. In *Hill,* prison officials found two inmates responsible for assaulting another prisoner and deprived them each of 100 days of good time credits based solely on the testimony of a guard who observed them and a third prisoner leaving the scene. Such evidence would never be enough to find a defendant guilty of assault in a regular criminal courtroom, yet the Supreme Court held that it was sufficient to satisfy the Due Process Clause.

      Furthermore, though the term collective responsibility or collective guilt does not appear in the Supreme Court's opinion in *Hill,* in that case the Court implicitly endorses the application of collective responsibility to facts such as those at issue here. Three inmates were observed leaving the scene of an assault in *Hill,* and two of those inmates were held responsible. In the absence of evidence directly linking any one of the inmates to the assault, the Supreme Court upheld the prison's sanctioning of two of those inmates as being not "without support or

10

otherwise arbitrary." In this case, two inmates shared a cell in which two homemade shanks were found, and one of those inmates, Denny, was sanctioned for possession of a weapon. The weapons may have belonged to Denny's cellmate, but in accordance with *Hill,* prison officials did not violate Denny's due process rights when they deprived him of his good time credits. Prison officials here had as evidence not only the presence of the weapons in a two-inmate cell but also the affirmative responsibility, of which the inmates were clearly on notice, that they were to keep their "area" free from contraband. The evidence in this case, therefore, is more substantial than the evidence presented against the inmates in *Hill.*

We are not oblivious to the realities of prison life that might make it difficult or even dangerous for prisoners in shared cells to be affirmatively responsible for policing the illicit activities of their cellmates. Nonetheless, the Due Process Clause requires us to balance a prisoner's liberty interest in good time credits against the prison's interest in maintaining a safe and secure environment. Assaults by inmates on both staff and other inmates are a major problem facing the federal prison system. From January to May 2012, there were approximately 215 serious assaults by inmates on other inmates and twelve serious assaults by inmates on prison staff. For the same time period, there were over 1,000 less serious assaults by inmates on other inmates as well as nearly 700 less serious assaults by inmates on prison staff. Prison safety concerns are particularly acute where, as here, the contraband consisted of weapons that even Denny's counsel conceded were potentially lethal.

In the case before us, it is undisputed that two homemade shanks were found in a space accessible from within Denny's cell. This evidence, by itself, constitutes "some evidence" that Denny possessed the weapons in question. Furthermore, and as noted herein, both the Seventh and Eighth Circuits have held inmates responsible for possession of contraband under circumstances similar to those present here. We see no reason to diverge from these courts. It follows that the DHO did not violate Denny's due process rights when it found that he had committed the prohibited act of "Possession of a Weapon," in

> violation of BOP Code 104, and sanctioned him with the forfeiture of forty days good time credit.

*Denny*, 708 F.3d at 145-47 (citations and footnotes omitted).

The Third Circuit has rejected the same arguments made by Lopez-Ugarte and has held that contraband found within a cell is constructively possessed by each inmate housed in that cell. It is undisputed that the weapon in this case was found in Lopez-Ugarte's cell. Accordingly, there was some evidence to support the DHO's finding that Lopez-Ugarte possessed the weapon. Lopez-Ugarte, therefore, is not entitled to a writ of habeas corpus.

**IV. Recommendation.**

For the foregoing reasons, it is recommended that Lopez-Ugarte's petition for a writ of habeas corpus be denied.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which

objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 21st day of March, 2014.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge